IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| TEXAS NATIONAL BANK f/k/a MERCEDES NATIONAL BANK | ) | |
| Plaintiffs, | ) | |
| v. | ) | Court No. 07-355C |
| | ) | Judge Firestone |
| UNITED STATES, | ) | |
| Defendant | ) | |

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

GREGORY G. KATSAS
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

MARK A. MELNICK.
Assistant Director

JOAN M. STENTIFORD
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Tele: (202) 616-0341
Fax: (202) 514-8624

Attorneys for Defendant

## TABLE OF CONTENTS

TABLE OF CONTENTS . . . . . . . . . . i

TABLE OF AUTHORITIES . . . . . . . . . . ii

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT . . . . . . . . . . 1

DEFENDANT'S BRIEF . . . . . . . . . . 1

STATEMENT OF THE ISSUES . . . . . . . . . . 1

STATEMENT OF FACTS . . . . . . . . . . 2

ARGUMENT . . . . . . . . . . 3

I. Standard For Summary Judgment . . . . . . . . . . 3

II. The Jurisdiction Of This Court Is Limited . . . . . . . . . . 4

III. Texas Bank Did Not Comply With The Anti-Assignment Acts . . . . . . . . . . 6

A. The Purpose And Requirements Of The Assignment Of Claims Act and Assignment Of Contracts Act . . . . . . . . . . 6

B. Texas Bank Failed To Provide The Contracting Officer And The Dispersing Officer With The Assignment Instrument . . . . . . . . . . 9

IV. Texas Bank's Claim Pursuant To The Assignment Of Claims Act Is Partially Barred By The Applicable Six-Year Statute Of Limitations . . . . . . . . . . 11

CONCLUSION . . . . . . . . . . 14

# TABLE OF AUTHORITIES

## CASES

Aetna Casualty & Surety Co. v. United States,
228 Ct. Cl. 146, 655 F.2d 1047 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

American Fin. Assocs., Ltd. v. United States,
5 Fed. Cl. 761 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

American National Bank & Trust Co. v. United States,
22 Cl. Ct. 7 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

American National Bank & Trust Co. v. United States,
23 Cl. Ct. 542, 546 n.4 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

Banco Bilboa Vizcaya-Puerto Rico v. United States,
48 Fed. Cl. 29 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 11

Bianchi v. United States,
475 F.3d 1268 (2007)I . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Celotex Corp. v. Catrett,
477 U.S. 317 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Colonial Navigation Company v. United States,
149 Ct. Cl. 242, 181 F. Supp. 237 (1960) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Dynalectron Corp. v. United States,
4 Cl. Ct. 424, 428, aff'd, 758 F.2d 665 (Fed. Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . 4

Eastport Steamship Corp. v. United States,
178 Ct. Cl. 599, 372 F.2d 1002 (1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Fidelity Construction Co. v. United States,
700 F.2d 1379 (Fed. Cir.), cert. denied, 464 U.S. 826 (1983) . . . . . . . . . . . . . . . . . . . . . 4

George Hyman Constr. Co. v. United States,
30 Fed. Cl. 170 (1993), aff'd, 39 F.3d 1197 (Fed. Cir. 1994) . . . . . . . . . . . . . . . . . . . . . 6

Heagy v. United States,

12 Cl. Ct. 694, 697 (1987), aff'd, 848 F.2d 1288 (Fed. Cir. 1988) . . . . . . . . . . . . . . . . . . 4

Kingsbury v. United States,
215 Ct. Cl. 136, 563 F.2d 1019 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

Library of Congress v. Shaw,
478 U.S. 310 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Martinez v. United States,
333 F.3d 1295 (Fed. Cir. 2003), cert. denied, 540 U.S. 1177 (2004) . . . . . . . . . . . 12, 13

McPhail v. United States,
149 Ct. Cl. 179, 181 F. Supp 251 (1960) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Mingus Constructors, Inc. v. United States,
812 F.2d 1387 (Fed. Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Norwest Bank Arizona v. United States,
37 Fed. Cl. 605 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

OPM v. Richmond,
496 U.S. 414 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Patterson v. United States,
173 Ct. Cl. 819, 354 F.2d 327 (1965) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Paxson Electric Co., Inc. v. United States,
14 Cl. Ct. 634 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Soriano v. United States,
352 U.S. 270 (1956) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Sweats Fashions, Inc. v. Pannill Knitting Co.,
833 F.2d 1560 (Fed. Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Thomas Funding Corp. v. United States,
15 Cl. Ct. 495 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Tuftco Corp. v. United States,
222 Ct. Cl. 277, 6 14 F.2d 740 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

United California Discount Corp. v. United States,
19 Cl. Ct. 504, 507-508 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

United States v. Connolly,
716 F.2d 882 (Fed. Cir. 1983), cert. denied, 465 U.S. 1065 (1984) . . . . . . . . . . . . . . . . . 5

United States v. King,
395 U.S. 1 (1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

United States v. Sherwood,
312 U.S. 584 (1941) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

United States v. Testan,
424 U.S. 392 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

**STATUTES**

48 C.F.R. § 32.805 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 10

48 C.F.R.§ 32.802(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

28 U.S.C. § 1491 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

28 U.S.C. § 2501 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 14

31 U.S.C. § 3727 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 10

31 U.S.C. § 3727(c)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

41 U.S.C. § 15(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

41 U.S.C. § 15(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

41 U.S.C. § 15(b)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Passim

UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| TEXAS NATIONAL BANK f/k/a MERCEDES NATIONAL BANK<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES,<br><br>Defendant | ) | Court No. 07-355C<br>Judge Firestone |

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 56 of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States respectfully requests that the Court grant summary judgment in favor of the United States upon the grounds that there are no genuine issues of material fact, and judgment should be entered in favor of the United States as a matter of law. In support of this motion, we rely upon the following brief, the allegations of the complaint, and the concurrently filed defendant's proposed findings of uncontroverted facts and attached appendix.

DEFENDANT'S BRIEF

STATEMENT OF THE ISSUES

1. Whether plaintiff, Texas Bank, ("Texas Bank")'s claim regarding the assignment to Texas Bank by All-Star Iron Works of certain contract payments is barred by the six-year statute of limitations for any payment made before June 4, 2001.

2. Whether plaintiff, Texas Bank ("Texas Bank"), lawfully executed and noticed an assignment of the contract's proceeds thereby requiring the defendant, United States, to make payment to Texas Bank rather than the contractor.

## STATEMENT OF FACTS[1]

This case involves a purported assignment of rights to payment on a contract between the U.S. Customs Service, now the Customs and Border Protection ("CBP") and All-Star Iron Works ("All-Star"). On June 26, 1996, All-Star was awarded an indefinite delivery/indefinite quantity ("ID/IQ") contract with the CBP to perform minor construction and repair jobs at various ports of entry in Texas. DPFUF ¶ 3. On September 2, 1998, and July 8, 1999, All-Star was awarded the delivery orders that are the subject of this lawsuit. DPFUF ¶¶ 4-5. On or about January 14, 2000, All-Star allegedly assigned its right to payment for work performed under that contract to the plaintiff, Texas National Bank, formerly known as Mercedes National Bank ("Texas Bank"). Texas Bank did not submit a copy of the notice of assignment to the disbursing officer as required by 41 U.S.C. § 15(b)(3). DPFUF ¶¶ 6-7.

On June 6, 2001, Texas Bank wrote a letter and an electronic mail message to William Mynatt, Administrative Contracting Officer, referring to the Notice of Assignment dated January 14, 2000, and inquiring why the Government had not complied with the assignment. DPFUF ¶ 15. In the letter, Mr. Gonzalez stated that he had seen several checks made out directly to All-Star, rather than jointly to Texas Bank. Id. Between January 14, 2000 and June 6, 2001, Texas Bank made no inquiry either of the Government or of its banking customer, All-Star as to the status of any payments under the delivery orders that were purportedly the subject of the January 14, 2000 notice of assignment.

---

[1] The United States also relies upon the concurrently filed "Defendant's Proposed Findings of Uncontroverted Facts," filed pursuant to RCFC 56(d).

On March 22, 2001, Aaron Gonzalez, Executive Vice President of Texas Bank, made a site visit to All-Star's construction sites relating to the delivery orders at issue here. DPFUF ¶¶ 13-14. Mr. Gonzalez noted that All-Star had completed performance of parts of the work under the delivery orders, and was entitled to progress payments for the completed work. Id. Despite this knowledge, Mr. Gonzalez made no inquiry of either All-Star nor the Government as to the status of any payments. Moreover, at no time during this period, did the bank request All-Star to notify it of when it received a payment, or make any attempt to review United States Treasury checks as they were deposited by All-Star.

CBP made payments by check for task orders related to the ID/IQ contract between March 1, 2000, and July 23, 2001. ¶ 22. These checks were made out to and sent to All-Star because the Government did not have proper notice that any party except All Star was the proper party to be paid under this contract. DPFUF ¶ 20. On July 20, 2001, Texas Bank did provide CBP with a completed EFT standard form 3881. The form had been completed by Bonnie De La Fuente, a Texas Bank employee, and signed by Cheryl Bellamy, President of Texas Bank, and directed CBP to transfer payments to All-Star Iron Works bank account number 010-334-1. Id. Subsequently, CBP processed electronic funds transfers and deposited money into the All-Star bank account as directed by Texas Bank. DPFUF ¶ 25.

## ARGUMENT

### I. Standard For Summary Judgment

Summary judgment pursuant to RCFC 56 is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Mingus Constructors, Inc. v. United States, 812

F.2d 1387, 1390 (Fed. Cir. 1987); Paxson Electric Co., Inc. v. United States, 14 Cl. Ct. 634, 642 (1988). The moving party must identify the legal and factual bases for its motion and specify those portions of the record that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Sweats Fashions, Inc. v. Pannill Knitting Co., 833 F.2d 1560, 1563 (Fed. Cir. 1987). The claims at issue may then be resolved on summary judgment unless the responding party establishes there is a factual dispute which must be tried. Anderson, 477 U.S. at 247-48; Sweats Fashions, 833 F.2d at 1562-63.

In this case, the material facts are not subject to a genuine dispute, and the United States is entitled to judgment as a matter of law. Accordingly, the Court should grant summary judgment in favor of the United States.

II. The Jurisdiction Of This Court Is Limited

The Court of Federal Claims is a court of limited jurisdiction. Heagy v. United States, 12 Cl. Ct. 694, 697 (1987), aff'd, 848 F.2d 1288 (Fed. Cir. 1988)(Table); Dynalectron Corp. v. United States, 4 Cl. Ct. 424, 428, aff'd, 758 F.2d 665 (Fed. Cir. 1984)(Table); see Soriano v. United States, 352 U.S. 270, 273 (1956). Absent congressional consent to entertain a claim against the United States, the Court lacks authority to grant relief. United States v. Testan, 424 U.S. 392, 399 (1976); United States v. Sherwood, 312 U.S. 584, 586 (1941).

Congressional consent to suit in this Court, a waiver of the Government's traditional immunity, must be explicit and strictly construed. Library of Congress v. Shaw, 478 U.S. 310, 318 (1986); United States v. King, 395 U.S. 1 (1969); Fidelity Construction Co. v. United States, 700 F.2d 1379, 1383 (Fed. Cir.), cert. denied, 464 U.S. 826 (1983). A waiver of sovereign

immunity, therefore, cannot be implied, but must be expressed "unequivocally" by Congress. Testan, 424 U.S. at 399; United States v. King, 395 U.S. at 1.

The central provision granting consent to suit in this Court is the Tucker Act, 28 U.S.C. § 1491. Testan, 424 U.S. at 397; Aetna Casualty & Surety Co. v. United States, 228 Ct. Cl. 146, 151, 655 F.2d 1047, 1051 (1981). Under that statute, an action may be maintained in this Court only if it is "founded either upon the Constitution or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491 (1982).

However, the Tucker Act does not create any substantive right of recovery against the United States for money damages. Testan, 424 U.S. at 398; Eastport Steamship Corp. v. United States, 178 Ct. Cl. 599, 605-07, 372 F.2d 1002, 1007-09 (1967). Rather, it merely confers jurisdiction upon the Court whenever the substantive right exists. Testan, 424 U.S. at 398; United States v. Connolly, 716 F.2d 882, 885 (Fed. Cir. 1983) (en banc), cert. denied, 465 U.S. 1065 (1984). A claimant, therefore, must look beyond this jurisdictional statute and establish some substantive provision of law, regulation, or the Constitution, which can fairly be construed as mandating compensation, to state a claim within the jurisdiction of this Court. United States v. Connolly, 716 F.2d at 885.

Texas Bank is not in privity with the United States. Accordingly, this case concerns only whether Texas Bank and All-Star validly executed an assignment of the contract's proceeds to bind the United States. Lacking privity with the Government, Texas Bank may not maintain an action based upon any breach of contract theory or implied-in-fact contract theory. Thomas Funding Corp. v. United States, 15 Cl. Ct. 495 (1988).

In its complaint, Texas Bank alleges jurisdiction pursuant to 31 U.S.C. § 3727, and 41 U.S.C. § 15. Comp. ¶ 1. As Texas Bank is a purported assignee of the proceeds of All-Star's contract with the Government, Texas Bank's claim can survive review in this Court only pursuant to the Anti-Assignment Acts, 31 U.S.C. § 3727 and 41 U.S.C. § 15. However, Texas Bank did not comply with the specific statutory and regulatory requirements of the Anti-Assignment Acts in order to perfect an assignment of the contract's proceeds. As Texas Bank is neither in privity with the Government nor properly an assignee of the contract's proceeds, summary judgment should be granted in favor of the Government.

## III. Texas Bank Did Not Comply With The Anti-Assignment Acts

### A. The Purpose And Requirements Of The Assignment of Claims Act and Assignment of Contracts Act

Unless specific conditions are met, assignments of Government contracts are barred by the Assignment of Claims Act, 31 U.S.C. § 3727 (1994), and Assignment of Contracts Act, 41 U.S.C. § 15 (1994) (the "Anti-Assignment Acts"), which contain a "broad nullification of any voluntary assignment of Government contracts except as allowed by the Act." American National Bank & Trust Co. v. United States, 22 Cl. Ct. 7, 14 (1990). This proscription

> serves a variety of purposes including preventing unrelated third parties not in privity with the Government from acquiring an enforceable interest in claims against it, obviating the investigation of alleged assignments, enabling the Government to deal only with the original claimant, and protecting the United States.

Id. at 14-15; see George Hyman Constr. Co. v. United States, 30 Fed. Cl. 170, 173 (1993) (Anti-Assignment Acts serve same purposes as privity requirement), aff'd, 39 F.3d 1197 (Fed. Cir. 1994). These statutes were enacted so that the Government would always be able to "deal exclusively with the original claimant" and would always be aware of its obligations. Patterson

v. United States, 173 Ct. Cl. 819, 823, 354 F.2d 327, 329 (1965). The purpose of the Anti-Assignment Acts is three-fold:

> first, to prevent persons of influence from buying up claims which might then be improperly urged upon Government officials; second, to prevent possible multiple payment of claims and avoid the necessity of the investigation of alleged assignments by permitting the Government to deal only with the original claimant; and third, to preserve for the Government defenses and counterclaims which might not be available against an assignee.

Kingsbury v. United States, 215 Ct. Cl. 136, 144, 563 F.2d 1019, 1024 (1977) (emphasis added).

Assignments of claims found to violate the Assignment of Claims Act, 31 U.S.C. § 3727, are invalidated, thereby returning the parties to the status quo ante. United California Discount Corp. v. United States, 19 Cl. Ct. 504, 507-508 (1990); Colonial Navigation Company v. United States, 149 Ct. Cl. 242, 181 F. Supp. 237 (1960). Pursuant to the Assignment of Contracts Act, 41 U.S.C. § 15, contracts wrongfully assigned may be annulled by the Government. Tuftco Corp. v. United States, 222 Ct. Cl. 277, 284 n.5, 614 F.2d 740, 744 n.5 (1980); McPhail v. United States, 149 Ct. Cl. 179, 181 F. Supp 251 (1960).

The sole exception to the prohibition of assignments is for the benefit of financing institutions. 31 U.S.C. § 3727 (1994). However, even in this circumstance, the assignee must establish, among other things, "that it (1) is a qualified financial institution; [and] (2) loaned money or at least made money available for the performance of the [underlying] contract." American National Bank & Trust Co. v. United States, 23 Cl. Ct. 542, 546 n.4 (1991).

To effect a valid assignment, the assignor must comply with several requirements listed in the Anti-Assignment Acts and the implementing regulations. The requirements of the Anti-Assignment Acts must be strictly construed to determine whether an attempted assignment is

valid. American Fin. Assocs., Ltd. v. United States, 5 Fed. Cl. 761, 768-69 (1984) (holding that failure to notify disbursing officer fatal to an alleged assignment); Banco Bilboa Vizcaya-Puerto Rico v. United States, 48 Fed. Cl. 29, 33 (2000). Specifically, the assignee is required to file written notification of the assignment and a copy of the assignment instrument with both the contracting officer and the disbursing official. 31 U.S.C. § 3727(c)(3); 41 U.S.C. § 15(b)(3); 48 C.F.R.§32.802(e). In addition to the basic statutory requirements, the FAR specifically details the manner in which a valid assignment can be secured. Pursuant to 48 C.F.R. § 32.805, the corporation assigning the contract must provide the Government the assignment instrument. The assignment instrument must be executed by the authorized representative, attested by the corporation secretary or assistant secretary, and impressed with the corporate seal or accompanied by a true copy of the resolution of the corporation's board authorizing the assignment. The FAR provides an example of a Notice of Assignment that comports with the requirements of the statutes and regulations, including a reference to the attachment of the assignment agreement to the notice. 48 C.F.R. 32.805(c). Additionally, the FAR provides that assignments of contract proceeds must assign all unpaid amounts payable pursuant to the contract. 48 C.F.R. 32.805(d)(1).

As evidenced by the requirements of the Anti-Assignment Acts and the implementing regulations, the assignment of the proceeds of a contract contemplates the adherence to a detailed procedure to protect both the Government and the contractor. Accordingly, an assignment prohibited by the Assignment of Claims Act "makes the assignment 'absolutely null and void.'" Kingsbury, 215 Ct. Cl. at 141, 563 F.2d at 1022.

B. Texas Bank Failed To Provide The Contracting Officer And The Dispersing Officer With The Assignment Instrument

Contrary to the requirements of 31 U.S.C. § 3727(c)(3); 41 U.S.C. § 15(b)(3); 48 C.F.R.§ 32.802(e), Texas Bank did not provide the contracting officer and the disbursing officer the assignment instrument that purportedly assigned the proceeds of the contract. As detailed above, the failure to do so renders the assignment void. Although Texas Bank did provide notice to the contracting officer that the companies intended to assign the contract, notice is only one portion of the assignment requirement. The parties' failure to also provide the actual instrument of assignment fundamentally contradicts the specific requirements of the Anti-Assignment Acts. Although the notice of assignment states that a copy of the assignment document was attached, no copy could be located in CBP's files. As this Court found in California Discount, the mere fact that the notice document states that a copy of the assignment document is attached is not dispositive of that issue if other evidence contradicts it, or, as here, where Texas Bank does not allege that it did provide the actual instrument to the contracting officer. Moreover, it is undisputed that Texas Bank provided neither the notice nor the actual instrument of assignment to the disbursing officer. DPFUF ¶ 7. Even though the two offices had the same address, 6026 Lakeside Boulevard, Indianapolis, Indiana, that location is a 75,000 square foot facility. Id. Mail addressed to the contracting officer would be sorted in the facility's mail room and routed directly to the addressee; employees working in other offices within the facility would have no occasion to see it. Id.

In contrast to the procedure and protections detailed in the Anti-Assignment Acts, the failure to provide the assignment instrument undermined the Government's legal authority to pay proceeds to any entity other than the contractor. OPM v. Richmond, 496 U.S. 414, 424 (1990)

(the appropriations clause of the Constitution prohibits the Government from paying money from the Treasury absent a Congressional appropriation). As assignments are generally prohibited, the disbursing officer had no legal authority to disburse payment to Texas Bank unless the narrow and specific requirements of the Anti-Assignment Acts are fulfilled. 41 U.S.C. § 15(a). As Texas Bank maintained no contractual relationship with the Government, Texas Bank is not in privity with the Government. Accordingly, Texas Bank's only possible claim is grounded in the purported assignment. As Texas Bank and All-Star did not comply with the requirements of the Anti-Assignment Acts by failing to provide the assignment instrument, their attempted transfer of the contract "cause[s] the annulment of the contract or order transferred, so far as the United States is concerned." 41 U.S.C. § 15.

In addition to undermining the disbursing officer's legal authority to pay Texas Bank, the parties' failure to comply with the Anti-Assignment Acts undermined the basic protections embodied in the Anti-Assignment Acts. Without the assignment instrument, the Government could be not be assured that Texas Bank was actually a financing institution (31 U.S.C. § 3727); that persons with authority to bind All-Star had agreed to the assignment (48 C.F.R. 32.805(a)(1)); nor that the agreement covered all unpaid amounts payable under the contract (41 U.S.C. § 15(b)(2). These basic requirements protect the Government from paying the wrong party and violating the clear mandate of the Anti-Assignment Acts.

The contracting officer's actions did not waive the requirements of the Anti-Assignment Acts. Although the Government may waive the requirements of the Anti-Assignment Acts during the course of a contract's administration, the contracting officer in this case did not assent to the assignment. See Norwest Bank Arizona v. United States, 37 Fed. Cl. 605 (1997).

Pursuant to the request of the contractor, the contracting officer did state that if Texas Bank provided an electronic funds transfer form, that CBP would make payments in accordance with the form. The ACO did not, however, modify the contract to make Texas Bank the payee of the contract proceeds. Moreover, the account designated by Texas Bank to receive the electronic funds transfer was an account on which All-Star was the account holder. Thus, no action of the contracting officer in this case could have altered the contract payee. While the contracting officer may have acknowledged that the payment should be sent to Texas Bank, the contracting officer did not authorize Texas Bank to become the payee of the contract proceeds. Even if affording Texas Bank the opportunity to direct the electronic funds transfer to the bank could be construed as changing the payee of the contract, on Texas Bank's own instructions, All-Star was designated to remain the payee. This does not waive the detailed requirements of the Anti-Assignment Acts. The actions of the contracting officer do not rise to the level of clear assent to the assignment required to demonstrate waiver. Banco Bilboa Vizcaya-Puerto Rico v. United States, 48 Fed. Cl. 29, 34 (2000) ("the purported assignee must show an affirmative manifestation of the 'meeting of minds;' between the assignee and the government, sufficient to satisfy the standard measure of assent in contract law").

As demonstrated above, Texas Bank did not obtain a valid assignment of the contract in this case. Absent a valid assignment, and consistent with Texas Bank's own instructions, CBP properly continued to make payments to All-Star Iron Works.

Even had there been a valid assignment, it could not have been effective because the electronic fund transfer information provided by Texas Bank directed the bank to deposit the money into an account held by All-Star. DPFUF ¶ 20. Indeed, Cheryl Bellamy, the Bank's

president, testified at her deposition that she did not know how CBP could have made electronic payments to Texas Bank when Texas Bank directed the Government to deposit the funds to All-Star's account. Id.

IV. Texas Bank's Claim Pursuant to the Assignment of Claims Act Is Partially Barred By The Applicable Six-Year Statute of Limitations

The Court does not possess jurisdiction to entertain Texas Bank's claim that the Government failed to honor an assignment of claims because the statute of limitations barred consideration of that claim to the extent that it involves payments occurring before June 6, 2001. A claim in the Court of Federal Claims is barred unless it is filed within six years after the claim first accrues. 28 U.S.C. § 2501 (2000). A claim first accrues when all events have occurred to fix the Government's alleged liability, entitling the claimant to demand payment and sue for his money. See Martinez v. United States, 333 F.3d 1295, 1303 (Fed. Cir. 2003) (en banc), cert. denied, 540 U.S. 1177 (2004). In this case, even assuming that Texas Bank had a valid assignment, it should have known that All-Star was receiving partial payments on the delivery orders purportedly assigned to Texas Bank during the time after the notice of assignment was sent to CBP in January, 2000. The contract and delivery orders clearly set out a payment and construction schedule.

All-Star began making requests for payment as early as February, 2000, and continued making requests for payment throughout the remainder of 2000 as well as in 2001. DPFUF ¶ 21. Any inquiry by Texas Bank to All-Star or to CBP would have revealed this information. Additionally, All-Star was receiving paper checks from the Government starting in March, 2000, and continuing until July 23, 2001. All-Star deposited each of these checks into its bank account at Texas Bank. Texas Bank could have monitored any and all federal checks deposited by All-

Star, or it could simply have asked All-Star to inform it when it received a check from the Government relating to one of the relevant delivery orders. Cheryl Bellamy, President of Texas Bank testified that none of these steps would have been impossible, only that Texas Bank did not pursue any of those options. DPFUF ¶ 24. Moreover, as noted, Aaron Gonzalez made a site visit to All-Star's construction sites associated with the delivery orders at issue here in March, 2001, and learned that All-Star had completed sufficient work to be entitled to progress payments. Yet, despite this knowledge, Texas Bank made no inquiry of either All-Star or the Government as to whether All-Star had received payments on the purportedly assigned delivery orders.

CBP awarded ID/IQ contract TC-I-96-013 to All-Star Iron Works on June 26, 1996. DPFUF ¶ 3. The delivery orders were awarded on September 2, 1998 and July 8, 1999. DPFUF ¶¶ 4, 5. Thus, assuming the assignment were valid, Texas Bank had a claim to any monies paid to All-Star for work on the relevant delivery orders as of the date the payment was made. Therefore, its claim to payment under the assignment accrued as of the time each payment was made to All-Star after January 12, 2000. Bianchi v. United States, 475 F.3d 1268, 1274 (2007) (cause of action arises under Tucker Act when all events have occurred that are necessary to bring the suit) (quoting Martinez v. United States, 333 F.3d 1295, 1303 (Fed. Cir. 2003).

In this case, payments were made to All-Star by United States Treasury check as follows:

| Date | Amount |
|---|---|
| March 1, 2000 | $ 32,419.15 |
| March 24, 2000 | $ 19,007.80 |
| June 16, 2000 | $ 25,409.50 |

| | |
|---|---|
| August 22, 2000 | $ 31,200.64 |
| November 13, 2000 | $ 58,908.55 |
| December 15, 2000 | $ 70,244.54 |
| January 20, 2001 | $ 56,405.65 |
| February 9, 2001 | $ 62,092.83 |
| March 20, 2001 | $ 55,781.07 |
| April 5, 2001 | $ 46,828.82 |
| May 11, 2001 | $ 27,914.35 |
| June 20, 2001 | $ 1,634.34 |
| July 23, 2001 | $ 43,010.81 |
| **Total:** | **$530,858.05** |

DPFUF ¶ 22.

All-Star deposited each of these checks in its bank account at Texas Bank. DPFUF ¶ 23. Texas Bank therefore knew or should have known that its claim under the assignment accrued every time All-Star deposited another check. Yet, Texas Bank did not bring this action until June 6, 2007. To the extent Texas Bank claims that the Government owed it payment of monies under the assignment on any date more than six years prior to June 6, 2007, all such claims are barred by the six-year statute of limitations. 28 U.S.C. § 2501 (2000). Because Texas Bank's claim to monies paid to All-Star before June 6, 2001 accrued more than six years before this case was filed, that claim is barred by the six-year statute of limitations. The Court, therefore, does not possess jurisdiction to entertain that portion of Texas Bank's claim.

## CONCLUSION

For all of the foregoing reasons, we respectfully request that the Court grant the Government's motion for summary judgment because Texas Bank failed to comply with the requirements for a valid assignment. In the alternative, we respectfully request that the Court dismiss Texas Bank's claim with respect to all payments made before June 6, 2001, as that portion of the claim is barred by the applicable six-year statute of limitations.

GREGORY G. KATSAS
Assistant Attorney General

JEANNE E. DAVIDSON
Director

/s/
MARK A. MELNICK
Assistant Director

OF COUNSEL:

ANDREW JONES
Office of Assistant Chief Counsel
U.S. Customs and Border Protection
6650 Telecom Drive
Indianapolis, Indiana 46278

s/ Joan M. Stentiford
JOAN M. STENTIFORD
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Department of Justice
Phone: (202) 616-0341
Fax: (202) 514-8624

July 30, 2007

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify under penalty of perjury that on this 30th day of July, 2008,"DEFENDANT'S MOTION FOR SUMMARY JUDGMENT," was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Joan M. Stentiford
JOAN M. STENTIFORD