IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| TEXAS NATIONAL BANK f/k/a MERCEDES NATIONAL BANK | ) | |
| Plaintiffs, | ) | |
| v. | ) | Court No. 07-355C |
| | ) | Judge Firestone |
| UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

DEFENDANT'S PROPOSED FINDINGS OF UNCONTROVERTED FACTS

Pursuant to Rule 56(d) of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States, respectfully submits Defendant's Proposed Findings of Uncontroverted Facts.

1. On April 19, 1996, All Star Iron Works ("All-Star") submitted an offer to the U.S. Customs Service indefinite delivery/indefinite quantity ("ID/IQ") contract number TC-I-96-013 to perform minor construction and repair jobs at various ports of entry in Texas.[1] Appendix ("App.") 1[2].

2. The Offer Form stated that the contract would be administered by the U.S. Customs Service Field Procurement Services Group, but that payment under the contract would be made by the U.S. Customs Service National Finance Center. Id.

[1]The contract was originally with the United States Customs Service, which was part of the Department of Treasury. Subsequently, the Custom Service was reorganized to be part of the Department of Homeland Security, and is now known as the Customs and Border Protection.

[2]References to "App. ___" refer to pages of the appendix filed simultaneously with this motion.

3. On June 26, 1996, All-Star was awarded prime contract number TC-I-96-013. App. 2.

4. On September 2, 1998, All-Star was awarded Delivery Order CS-I-98-25600-1 under prime contract TC-I-96-013 to construct Phase I for the canopies at the Brownsville Port of Entry. App. 3-4.

5. On July 8, 1999, All-Star was awarded three Delivery Orders under prime contract TC-I-96-013. Specifically, All-Star was awarded CS-I-99-24749-6 to design build phase I of the canopies at the Customs Los Indios bridge; CS-I-99-24747-0 to design build phase I of the canopies at the customs Los Tomates bridge; CS-I-99-24748-8 to design build phase I of the customs canopies at the B&M Bridge. App. 5-10.

6. On or about January 14, 2000, All-Star executed a document entitled "Assignment" purporting to assign its right to payment for work performed under the delivery orders CS-I-98-25600-1, CS-I-99-24749-6, CS-I-99-24747-0, and CS-I-99-24748-8 to the plaintiff, Texas National Bank, formerly known as Mercedes National Bank ("Texas Bank"). App. 11-12.

7. Neither Texas Bank nor All-Star Iron Works submitted the actual assignment instrument to the disbursing office. App. 128-129, Declaration of Ronald H. Newman, ¶ 4.

8. Between 1985 and 2005, Custom's Commercial Accounts Section was located in a facility at 6026 Lakeside Boulevard in Indianapolis, Indiana. Many other functions performed were also located at that same facility which was approximately 75,000 square feet and housed over three hundred employees. Incoming mail was sorted by addressee in the mail room. No one within Commercial Accounts would have had an opportunity to see mail addressed to any

other part of the building. App. 128-129, Declaration of Ronald H. Newman; App. 130-131 ¶ 5, Declaration of Edward Mynatt ¶ 5.

9. In a letter dated January 14, 2000, Texas Bank sent the contracting officer a letter indicating that Texas Bank was an assignee of the proceeds of "all monies due or to become due" under delivery orders CS-I-98-25600-1, CS-I-99-24749-6, CS-I-99-4747-0, and CS-I-99-24748-8, and that payments due or to become due should be made to Texas Bank. App. 13. The notice was purportedly signed by Cheryl Bellamy, vice-president of Texas Bank, Alejandro Soto, Jr., principal of All-Star Iron Works, and William Mynatt, Administrative Contracting Officer ("ACO") of the Customs Service. Id.

10. In a letter dated January 24, 2000, William Mynatt, the ACO, referenced Texas Bank's request for "acknowledgment of receipt for payments of Customs contracts awarded to Alejandro Soto, Jr." App. 14.

11. Between February 2, 2000 and September 27, 2001, All-Star made 45 requests for payment on delivery orders CS-I-98-25600-1, CS-I-99-24749-6, CS-I-99-24747-0, and CS-I-99-24748-8. App. 16-60.

12. In a letter dated February 22, 2000, All-Star provided Texas Bank with a construction cost estimate for the Los Tomates Outbound Canopy project (Delivery Order CS-I-99-24747-0 ) setting out the amounts All-Star expected to be paid for various aspects of that project. App. 61

13. On March 22, 2001, Aaron Gonzalez, Executive Vice-President of Texas Bank, made his first site visit to the four different construction sites related to delivery orders CS-I-98-25600-1, CS-I-99-24749-6, CS-I-24747-0, and CS-I-99-24748-8. This was his first involvement

with All-Star's account as it related to the delivery orders. App. 62 Deposition of Aaron Gonzalez 53:21-54:7, App. 64-65.

14. The purpose of Mr. Gonzalez's visit to All-Star's construction sites was to investigate the status of the progress of All-Star's work. At the March 22, 2001 visit, Mr. Gonzalez confirmed that All-Star had performed some of the work and was entitled to be paid for it. App. at Gonzalez Depo. 54:14-57:24. App. 65-68.

15. On June 6, 2001, Mr. Gonzalez sent a letter and an electronic mail message to William Mynatt, ACO, referring to the Notice of Assignment dated January 14, 2000, and inquiring why the Government had not complied with the assignment. In the letter, Mr. Gonzalez stated that he had seen several checks made out directly to All-Star, rather than jointly to Texas Bank. App. 62-69.

16. Mr. Mynatt responded by electronic mail on June 11, 2001, informing Mr. Gonzalez that although the address for mailing payments had been updated in CBP's computers, it had not been updated in the Department of Treasury's computers. App. 70.

17. On June 11, 2001, Mr. Gonzalez wrote to Lee Sullivan at CBP, referring to a conversation that had occurred between them earlier that day, and enclosing several documents relating to the Notice of Assignment and Texas Bank's interest in payments made to All-Star under the relevant delivery orders. App. 71.

18. In a letter dated June 12, 2001, Mr. Gonzalez asked Mr. Mynatt, ACO, to issue checks relating to the relevant delivery orders jointly to All-Star and to Texas Bank. App. 72.

19. In a letter dated July 4, 2001, Mr. Mynatt informed Mr. Gonzalez that payments could not be forwarded to the bank without a completed standard form 3881 containing the

Electronic Funds Transfer ("EFT") information of the account into which the funds should be deposited. App. 73

20. On July 20, 2001, CBP received a completed EFT standard form 3881. The form had been completed by Bonnie De La Fuente, a Texas Bank employee, and signed by Cheryl Bellamy, President of Texas Bank, and directing CBP to transfer payments to bank account number 010-334-1. The account holder on this account is All-Star Iron Works. Ms. Bellamy testified that she did not know how the Government could have made electronic payments to Texas Bank when Texas Bank directed the Government to deposit the funds to All-Star's account. App. 74. Deposition of Cheryl Bellamy 44:19-47:10. App. 82-85.

21. Texas Bank submitted requests to the Customs Service for payment on delivery orders CS-I-98-25600-1, CS-I-99-24749-6, CS-I-99-24747-0, and CS-I-99-24748-8 starting in February, 2000. App. 15-35.

22. The Customs and Border Patrol ("CBP") made payments by check for task orders related to the ID/IQ contract between March 1, 2000, and July 23, 2001.

In this case, payments were made to All-Star by United States Treasury check as follows:

| Date | Amount |
|---|---|
| March 1, 2000 | $ 32,419.15 |
| March 24, 2000 | $ 19,007.80 |
| June 16, 2000 | $ 25,409.50 |
| August 22, 2000 | $ 31,200.64 |
| November 13, 2000 | $ 58,908.55 |
| December 15, 2000 | $ 70,244.54 |
| January 20, 2001 | $ 56,405.65 |
| February 9, 2001 | $ 62,092.83 |
| March 20, 2001 | $ 55,781.07 |
| April 5, 2001 | $ 46,828.82 |
| May 11, 2001 | $ 27,914.35 |
| June 20, 2001 | $ 1,634.34 |
| **Total:** | **$530,858.05** |

App. 86-114.

23. Each of the checks listed in paragraph 20, above, was issued between March 1, 2000 and July 23, 2001, was processed by the Texas Bank and deposited into All-Star's bank account as directed by Texas Bank. Id.

24. Cheryl Bellamy, President of Texas Bank testified that All-Star deposited each of these checks into its bank account at Texas Bank, but that Texas Bank did not monitor federal checks deposited by All-Star, nor did the bank simply ask All-Star to inform it when it received a check from the Government relating to one of the relevant delivery orders. Bellamy Dep. 32:13-34:11; 36:6-37:12. App. 76-81.

25. After July 23, 2001, CBP began making payments for task orders related to the ID/IQ contract by electronic funds transfer. The following payments were issued, as directed in the EFT form:

| | | |
|---|---|---|
| CS-I-98-25600-1 | 08/23/2001 | $ 16,644.00 |
| | 10/23/2001 | $ 21,397.73 |
| CS-I-99-24747-0 | 08/23/2001 | $ 5,400.00 |
| | 10/24/2001 | $ 29,097.40 |
| CS-I-99-24748-8 | 10/17/2001 | $ 21,206.00 |
| | 10/24/2001 | $ 21,206.00 |
| CS-I-99-24749-6 | 10/24/2001 | $ 10,073.25 |
| | TOTAL: | $125,024.38 |

App. 82-127.

26. Additionally, three payments were issued by check on July 23, 2001, three days after receipt of the EFT form. At that time, it routinely took up to 10 days for a change in EFT information to take effect.

| | | |
|---|---|---|
| CS-I-98-25600-1 | 07/23/2001 | $ 4,344.25 |
| CS-I-99-24747-0 | 07/23/2001 | $19,497.65 |
| CS-I-99-24749-6 | 07/23/2001 | $19,168.91 |
| | TOTAL: | $43,010.81 |

App. 115.

27. On June 6, 2007, Texas Bank initiated the present action.

GREGORY G. KATSAS
Assistant Attorney General

JEANNE E. DAVIDSON
Director

MARK A. MELNICK
Assistant Director

OF COUNSEL:

ANDREW JONES
Office of Assistant Chief Counsel
U.S. Customs and Border Protection
6650 Telecom Drive
Indianapolis, Indiana 46278

s/ Joan M. Stentiford
JOAN M. STENTIFORD
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Department of Justice
Phone: (202) 616-0341
Fax: (202) 514-8624

July 30, 2007

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify under penalty of perjury that on this 30th day of July, 2008,"DEFENDANT'S PROPOSED FINDINGS OF UNCONTROVERTED FACT," was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Joan M. Stentiford
JOAN M. STENTIFORD