**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **TEXAS NATIONAL BANK f/k/a MERCEDES NATIONAL BANK** | § | |
| **Plaintiff,** | § | |
| **VS.** | § | **NO. 07-00355C** |
| | § | **Judge Firestone** |
| **UNITED STATES** | § | |
| **Defendant.** | § | |

**PLAINTIFF'S RESPONSE TO
DEFENDANT'S PROPOSED FINDIGNS OF UNCONTROVERTED FACTS**

Pursuant to Rule 56(h)(2) of the Rules of the United States Court of Federal Claims ("TNB"), Plaintiff, Texas National Bank f/k/a Mercedes National Bank, respectfully submits Plaintiff's Response to Defendant's Proposed Findings of Uncontroverted Facts.

1. On April 19, 1996, All Star Iron Works ("All-Star") submitted an offer to the U.S. Customs Service indefinite delivery/indefinite quantity ("ID/IQ") contract number TC-I-96-013 to perform minor construction and repair jobs at various ports of entry in Texas.[1] Appendix ("App.")1[2]

**PLAINTIFF'S RESPONSE:** Plaintiff agrees with this statement of fact in part, but notes that the Document referenced, App. 1, has been described in this lawsuit as the final Contract between All Star and Defendant, not just an offer. Plaintiff would also note that the document appears to be incomplete. Nevertheless, Plaintiff does not object to the admission into evidence of this incomplete document.

[1] The contract was originally with the United States Customs Service, which was part of the Department of Treasury. Subsequently, the Custom Service was reorganized to be part of the Department of Homeland Security, and is now known as the Customs and Border Protection.
[2] References to "App. _" refer to pages of the appendix filed simultaneously with this motion.

2. The Offer Form stated that the contract would be administered by the U.S. Customs Service Field Procurement Services Group, but that payment under the contract would be made by the U.S. Customs Service National Finance Center. *Id.*

**PLAINTIFF'S RESPONSE:** Plaintiff agrees that the document says what it says.

3. On June 26, 1996, All-Star was awarded prime contract number TC-I-96-013. App. 2.

**PLAINTIFF'S RESPONSE:** Agree.

4. On September 2, 1998, All-Star was awarded Delivery Order CS-I-98-25600-1 under prime contract TC-I-96-013 to construct Phase I for the canopies at the Brownsville Port of Entry. App. 3-4.

**PLAINTIFF'S RESPONSE:** Agree.

5. On July 8, 1999, All-Star was awarded three Delivery Orders under prime contract TC-I-96-013. Specifically, All-Star was awarded CS-I-99-24749-6 to design build phase I of the canopies at the Customs Los Indios bridge; CS-I-99-24747-0 to design build phase I of the canopies at the customs Los Tomates bridge; CS-I-99-24748-8 to design build phase I of the customs canopies at the B&M Bridge. App. 5-10.

**PLAINTIFF'S RESPONSE:** Agree.

6. On or about January 14, 2000, All-Star executed a document entitled "Assignment" purporting to assign its right to payment for work performed under the delivery orders CS-I-98-25600-1, CS-I-99-24749-6, CS-I-99-24747-0, and CS-I-99-24748-8 to the plaintiff, Texas National Bank, formerly known as Mercedes National Bank ("Texas Bank"). App. 11-12.

**PLAINTIFF'S RESPONSE:** Agree.

7. Neither Texas Bank nor All-Star Iron Works submitted the actual assignment instrument to the disbursing office. App. 128-129, Declaration of Ronald H. Newman, ¶4.

**PLAINTIFF'S RESPONSE:** Plaintiff objects to this mischaracterization of the evidence. Defendant has offered no evidence to support this bald misstatement of fact. Defendant cites to the Declaration of Ronald Newman as its sole support for this statement. Def.'s App. 128-129. Plaintiff objects to the admission of the Newman Declaration as containing statements that are conclusory, speculative, not based on personal knowledge and therefore premised on hearsay. As a preliminary matter, it does not even appear that Mr. Newman is qualified to make the statements he makes. **Importantly Newman never testifies that he was the "disbursing officer" for the subject contract, or that he was in any way involved at all in any of the dealings between Defendant, the Bank and All Star. Even worse, Newman admits that he did not even start working in the National Finance Office for Customs *until July 23, 2007.*** *Id*. at ¶1. That is several years after the occurrence of the events relevant to this lawsuit. Therefore all of the duties that he describes in ¶2 are irrelevant as they pertain to duties performed from July 23, 2007 to the present date, and Plaintiff objects to ¶2 as being irrelevant. Plaintiff further objects to, and asks the Court to strike, the entirety of ¶3 and ¶5 of Newman's Declaration because there is no predicate or foundation as to how Mr. Newman has personal knowledge of the facts suggested therein, given that he has only been working in his present position since July 2007, and therefore said statements are conclusory, speculative, lack personal knowledge, and are most likely based on hearsay.

As for ¶4, said narrow statement by Newman that he himself has not located any documents evidencing the assignment does not support the broader statement made above that "*[n]either Texas Bank nor All-Star Iron Works submitted the actual assignment instrument to the disbursing office*". First of all, Newman does not testify that he was the disbursing officer, or that he is the custodian of records for the Customs service; nor does he testify as to what steps he took to search Customs' records for the assignment. That he, by himself, reviewed an undefined group of perhaps limited documents that he, by himself, has custody and control over, does not in any way mean that the document does not exist within Customs' files, or is within the custody or control of another employee at Customs (such as the custodian of records).

Finally, this statement of fact is controverted by the testimony of former Bank President Bellamy, who has testified that she did, in fact, mail the actual Assignment to Customs in conformity with the statutory notice provisions.

8. Between 1985 and 2005, Custom's Commercial Accounts Section was located in a facility at 6026 Lakeside Boulevard in Indianapolis, Indiana. Many other functions performed were also located at that same facility which was approximately 75,000 square feet and housed

over three hundred employees. Incoming mail was sorted by addressee in the mail room. No one within Commercial Accounts would have had an opportunity to see mail addressed to any other part of the building. App. 128-129, Declaration of Ronald H. Newman; App. 130-131 ¶5, Declaration of Edward Mynatt ¶ 5.

**PLAINTIFF'S RESPONSE:** Plaintiff objects to this statement of facts as being unsupported by proper, admissible, summary judgment evidence. Defendant cites to the Declaration of Ronald Newman ¶5 as its sole support for this statement. Def.'s App. 128-129. As described above, Plaintiff objects to the admission of the Newman Declaration ¶5 as containing statements that are conclusory, speculative, not based on personal knowledge and therefore premised on hearsay. **Newman admits that he did not even start working in the National Finance Office for Customs *until July 23, 2007*.** Id. at ¶1. Therefore there is no predicate or foundation as to how Mr. Newman has personal knowledge of the facts suggested in ¶5, in which he describes the functioning of the Customs Commercial Accounts Section from 1985 to 2005, given that he has only been working in his present position with the Customs Commercial Accounts Section since July 2007, and therefore said statements are conclusory, speculative, lack personal knowledge, and are most likely based on hearsay. Defendant also cites the Declaration of Edward Mynatt, at ¶5, for this same factual stipulation, yet nowhere in the Mynatt Declaration does he say anything to support this contention.

9. In a letter dated January 14,2000, Texas Bank sent the contracting officer a letter indicating that Texas Bank was an assignee of the proceeds of "all monies due or to become due" under delivery orders CS-I-98-25600-1, CS-I-99-24749-6, CS-I-99-4747-0, and CS-I-99-247488, and that payments due or to become due should be made to Texas Bank. App. 13. The notice was purportedly signed by Cheryl Bellamy, vice-president of Texas Bank, Alejandro Soto, Jr., principal of All-Star Iron Works, and William Mynatt, Administrative Contracting Officer ("ACO") of the Customs Service. *Id.*

**PLAINTIFF'S RESPONSE:** Plaintiff agrees with this statement of fact in large part, but objects to Defendant's characterization of the referenced document as a simple "letter", when in fact it is the Notice of Assignment that is the centerpiece of this litigation. Plaintiff also objects to the omission of the important fact that Defendant's representative, Mynatt, signed the Notice of Assignment only after having sent it to be reviewed by Customs' office of Chief Counsel, as evidenced by Mynatt's January 24, 2000 letter, attached as App. 015 to DPFUF, in which he informed the Bank that he had

already sent the Notice of Assignment to the Chief Counsel for review and approval. As a result, Plaintiff would modify this statement as follows.

**PLAINTIFF'S PROPOSED REVISION:**

10. On or about January 14,2000, Texas Bank sent the contracting officer a copy of the Notice of Assignment indicating that Texas Bank was the assignee of the proceeds of "all monies due or to become due" under delivery orders CS-I-98-25600-1, CS-I-99-24749-6, CS-I-99-4747-0, and CS-I-99-247488, and that payments due or to become due should be made to Texas Bank. App. 13. The notice was signed by Cheryl Bellamy, vice-president of Texas Bank, and Alejandro Soto, Jr., principal of All-Star Iron Works. After seeking, and receiving, approval from Customs' Office of Chief Counsel, William Mynatt, Administrative Contracting Officer ("ACO") of the Customs Service, signed the Notice of Assignment. App. 15.

11. In a letter dated January 24, 2000, William Mynatt, the ACO, referenced Texas Bank's request for "acknowledgment of receipt for payments of Customs contracts awarded to Alejandro Soto, Jr.". App. 14.

**PLAINTIFF'S RESPONSE:** Plaintiff objects to this mischaracterization of the evidence. Mynatt's January 24, 2000 letter did not simply "reference" the Notice of Assignment; in his letter Mynatt informed the Bank that he had already forwarded the Notice of Assignment to Custom's Office of Chief Counsel for review, and informed the Bank that, once "legal approval is received the acknowledgement will be signed and forwarded." App. 015.

**PLAINTIFF'S PROPOSED REVISION:**

12. In a letter dated January 24, 2000, William Mynatt, the ACO, acknowledged receipt of the Notice of Assignment and informed the Bank that he had forwarded the Notice of Assignment to Custom's Office of Chief Counsel for review, and informed the Bank that, once "legal approval is received the acknowledgement will be signed and forwarded." App. 015. Thereafter Mr. Mynatt signed the Notice of Assignment and returned same to the Bank.

13. Between February 2, 2000 and September 27, 2001, All-Star made 45 requests for payment on delivery orders CS-I-98-25600-1, CS-I-99-24749-6, CS-I-99-24747-0, and CS-I-99-24748-8. App. 16-60.

**PLAINTIFF'S RESPONSE:** Agree.

14. In a letter dated February 22, 2000, All-Star provided Texas Bank with a construction cost estimate for the Los Tomates Outbound Canopy project (Delivery Order CS-I-99-24747-0) setting out the amounts All-Star expected to be paid for various aspects of that project. App. 61.

> **PLAINTIFF'S RESPONSE:** Plaintiff generally agrees with this statement, but would just point out that Defendant has erroneously cited to the wrong evidence. The correct document is App. 14.

15. On March 22, 2001, Aaron Gonzalez, Executive Vice-President of Texas Bank, made his first site visit to the four different construction sites related to delivery orders CS-I-98-25600-1, CS-I-99-24749-6, CS-I-24747-0, and CS-I-99-24748-8. This was his first involvement with All-Star's account as it related to the delivery orders. App.62 Deposition of Aaron Gonzalez 53:21-54:7, App. 64-65.

**PLAINTIFF'S RESPONSE:** Agree.

16. The purpose of Mr. Gonzalez's visit to All-Star's construction sites was to investigate the status of the progress of All-Star's work. At the March 22, 2001 visit, Mr. Gonzalez confirmed that All-Star had performed some of the work and was entitled to be paid for it. App. at Gonzalez Depo. 54:14-57:24. App.65-68.

> **PLAINTIFF'S RESPONSE:** Agree. But Mr. Gonzalez only concluded that All Star had performed some of the work; he never made a determination that All Star had actually been paid by the Government. See Gonzalez Depo., at 57:1-14, attached to PPFUF as App. 57.

17. On June 6, 2001, Mr. Gonzalez sent a letter and an electronic mail message to William Mynatt, ACO, referring to the Notice of Assignment dated January 14, 2000, and inquiring why the Government had not complied with the assignment. In the letter, Mr. Gonzalez stated that he had seen several checks made out directly to All-Star, rather than jointly to Texas Bank. App.62-69.

**PLAINTIFF'S RESPONSE:** Agree.

18. Mr. Mynatt responded by electronic mail on June 11, 2001, informing Mr. Gonzalez that although the address for mailing payments had been updated in CBP's computers, it had not been updated in the Department of Treasury's computers. App.70.

**PLAINTIFF'S RESPONSE:** Agree.

19. On June 11, 2001, Mr. Gonzalez wrote to Lee Sullivan at CBP, referring to a conversation that had occurred between them earlier that day, and enclosing several documents relating to the Notice of Assignment and Texas Bank's interest in payments made to All-Star under the relevant delivery orders. App.71.

**PLAINTIFF'S RESPONSE:** Agree.

20. In a letter dated June 12,2001, Mr. Gonzalez asked Mr. Mynatt, ACO, to issue checks relating to the relevant delivery orders jointly to All-Star and to Texas Bank. App. 72.

**PLAINTIFF'S RESPONSE:** Agree.

21. In a letter dated July 4, 2001, Mr. Mynatt informed Mr. Gonzalez that payments could not be forwarded to the bank without a completed standard form 3881 containing the Electronic Funds Transfer ("EFT') information of the account into which the funds should be deposited. App. 73.

**PLAINTIFF'S RESPONSE:** Agree.

22. On July 20, 2001, CBP received a completed EFT standard form 3881. The form had been completed by Bonnie De La Fuente, a Texas Bank employee, and signed by Cheryl Bellamy, President of Texas Bank, and directing CBP to transfer payments to bank account number 010-334-1. The account holder on this account is All-Star Iron Works. Ms. Bellamy testified that she did not know how the Government could have made electronic payments to Texas Bank when Texas Bank directed the Government to deposit the funds to All-Star's account. App. 74. Deposition of Cheryl Bellamy 44: 19-47: 10. App. 82-85.

**PLAINTIFF'S RESPONSE:** Agree.

23. Texas Bank submitted requests to the Customs Service for payment on delivery orders CS-I-98-25600-1, CS-I-99-24749-6, CS-I-99-24747-0, and CS-I-99-24748-8 starting in February, 2000. App. 15-35.

**PLAINTIFF'S RESPONSE:** Plaintiff objects to this mischaracterization of the evidence. Defendant has offered no evidence to support this bald misstatement of fact. Apparently Defendant has mistakenly listed the Bank as the entity that sent the requests for payment, instead of All Star. The Bank never had any notification that All Star had sent requests for payments to Customs.

24. The Customs and Border Patrol ("CBP") made payments by check for task orders related to the ID/IQ contract between March 1, 2000, and July 23, 2001.

In this case, payments were made to All-Star by United States Treasury check as follows:

| **Date** | **Amount** |
|---|---|
| March 1, 2000 | $ 32,419.15 |
| March 24, 2000 | $ 19,007.80 |
| June 16, 2000 | $ 25,409.50 |
| August 22, 2000 | $ 31,200.64 |
| November 13, 2000 | $ 58,908.55 |
| December 15, 2000 | $ 70,244.54 |
| January 20, 2001 | $ 56,405.65 |
| February 9, 2001 | $ 62,092.83 |
| March 20, 2001 | $ 55,781.07 |
| April 5, 2001 | $ 46,828.82 |
| May 11, 2001 | $ 27,914.35 |

| | |
|---|---|
| June 20, 2001 | $ 1,634.34 |
| **Total:** | **$530,858.05** |

App.86-114.

**PLAINTIFF'S RESPONSE:** Agree.

25. Each of the checks listed in paragraph 20, above, was issued between March 1, 2000 and July 23, 2001, was processed by the Texas Bank and deposited into All-Star's bank account as directed by Texas Bank. *Id.*

> **PLAINTIFF'S RESPONSE:** Plaintiff objects to this statement of facts as being unsupported by any evidence whatsoever. Plaintiff further objects to the admissibility into evidence of the following documents attached to Defendant's PFUF: APP 088, 089, 091, 093, 097, 099, 102, 105, 109, 111, 113, and 115 on the grounds that said documents have not been properly authenticated and constitute hearsay. Given the lack of any substantive evidenced verifying what these documents are or why they are relevant, Plaintiff further objects to any implication by Defendant that any of the afore mentioned documents correspond, pertain to or are connected with any check issued by Defendant to All Star, and also objects to any implication that said documents pertain or relate to the contract or the Assignment at issue. Furthermore, there is no evidence that each of the checks was "processed by" the Bank, and no evidence that any check was deposited into All Star's bank account with the Bank. Finally there is no evidence that any check was deposited "as directed by" the Bank.
>
> Since none of the statements contained in Defendant's PFUF ¶23 are supported by evidence, the Court should strike the entire paragraph.

26. Cheryl Bellamy, President of Texas Bank testified that All-Star deposited each of these checks into its bank account at Texas Bank, but that Texas Bank did not monitor federal checks deposited by All-Star, nor did the bank simply ask All-Star to inform it when it received a check from the Government relating to one of the relevant delivery orders. Bellamy Dep. 32:13-34:11; 36:6-37:12. App.76-81.

> **PLAINTIFF'S RESPONSE:** Plaintiff objects to this grossly outrageous mischaracterization of the evidence. Nowhere did Mrs. Bellamy ever testify that she knew that "All-Star deposited each of these checks into its bank account at Texas Bank". Defendant has just simply made this up. Mrs. Bellamy's testimony in the cited pages is

clear that the Bank had no reason to believe that Defendant was violating the Assignment and had no reason to suspect that All Star was getting paid directly by Defendant. Since the Bank had no reason to suspect, the Bank had no reason to monitor checks being deposited into the Bank.

27. After July 23, 2001, CBP began making payments for task orders related to the ID/IQ contract by electronic funds transfer. The following payments were issued, as directed in the EFT form: App. 82-127.

**PLAINTIFF'S RESPONSE:** Agree.

| | | |
|---|---|---|
| CS-I -98-25600-1 | 08/23/2001 | $ 16,644.00 |
| | 10/23/2001 | $ 21,397.73 |
| CS-I-99-24747-0 | 08/23/2001 | $ 5,400.00 |
| | 10/24/2001 | $ 29,097.40 |
| CS-I-99-24748-8 | 10/17/2001 | $ 21,206.00 |
| | 10/24/2001 | $ 21,206.00 |
| CS-I-99-24749-6 | 10/24/2001 | $ 10,073.25 |
| | **TOTAL:** | **$125,024.38** |

28. Additionally, three payments were issued by check on July 23, 2001, three days after receipt of the EFT form. At that time, it routinely took up to 10 days for a change in EFT information to take effect.

| | | |
|---|---|---|
| CS-I-98-25600-1 | 07/23/200 | $14,344.25 |
| CS-I-99-24747-0 | 07/23/2001 | $19,497.65 |
| CS-I-99-24749-6 | 07/23/2001 | $19,168.91 |
| | **TOTAL:** | **$43,010.81** |

App. 115.

**PLAINTIFF'S RESPONSE:** Agree

29. On June 6, 2007, Texas Bank initiated the present action.

**PLAINTIFF'S RESPONSE:** Agree

Respectfully submitted,

**CASTILLO SNYDER, P.C.**
Bank of America Plaza, Suite 1020
300 Convent Street

San Antonio, TX 78205
Telephone: (210) 630-4200
Facsimile: (210) 630-4210

By: s/Edward C. Snyder
EDWARD C. SNYDER
State Bar No. 00791699

**ATTORNEYS FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

I hereby certify under penalty of perjury that on this __ day of ___ , 2008, “Plaintiff’s Response to Defendant’s Proposed Finding of Uncontroverted Facts” was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the court’s electronic filing system. Parties may access this filing through the Court’s system.

/s/Edward C. Snyder
EDWARD C. SNYDER